NICHOLAS P. CORT and others

*v.*

MARY A. SKILLIN and others.

Where it is sought to establish a trust on the ground of *mala fides*, the fraud must be proved.

Creditors' bill. On final hearing on pleadings and proofs.

*Mr. W. P. Wilson,* for complainants.

*Mr. R. S. Green,* for defendants.

THE CHANCELLOR.

The complainants, judgment creditors of William Skillin, seek to subject to the payment of their judgment certain land and premises in the city of Elizabeth held by his wife. The money with which the land was purchased and the house built upon it was derived from the husband. It was part of the purchase-money received by him for a house and lot owned by him. He sold that property to the Central Railroad Company of New Jersey, about the 1st of May, 1873, for $7,000 over and above the encumbrance

Cort *v.* Skillin.

upon it. He used part of the proceeds of the sale in paying accrued taxes on the property, and in paying his business debts, and the rest he gave to his wife, for, as they say, her share of the purchase-money. With the money (about $4,000) which she so received from him she bought the land in question in this suit, and built a dwelling-house upon it. They allege that she contributed of her own money to the building of the house which was on the property sold to the railroad company; that the money which she so contributed was the proceeds of her own industry, in sewing and keeping a boarding-house, and that the $4,000, or thereabouts, paid over to her out of the proceeds of the sale of the property, were her fair share of the purchase-money, in view of that contribution.

The bill is filed against Skillin and his wife. It prays answer on oath, and they have both answered. They do not state in their answer the amount of money contributed by her, nor does he state it in his testimony. She was not sworn as a witness. The land in question in this suit was conveyed to her on or about the 2d of July, 1873. The deed to her therefor was recorded on that day. The dealings between the complainants and Skillin, out of which their debt arose, did not commence until the 21st of that month. His business, which he carried on in the city of Elizabeth from 1851 to 1874, was that of a sheet-iron worker and tin and coppersmith, and he dealt in and set up furnaces and ranges. The complainant's debt was contracted for goods sold to him in his business. He appears to have been indebted to one or more persons, and to the firm of Phelps, Dodge & Co., in New York, at the time when his wife purchased the land in question, but it does not appear that he was unable to pay all his debts. If he was so, the persons whom he then owed are not the complainants in this suit. The money received by him for his property from the railroad company was his own. He gave part of it to his wife, as he and she swear in their answer, which is responsive to the bill, as her due.

Cort *v.* Skillin.

Neither the answer nor the proof discloses, indeed, as before stated, the amount of money which she contributed to the building of the house on the property sold. It appears, however, that he gave about $4,000 of the money received from the sale to her for her own use, and as her separate property. There is no proof that he did so with a view to hindering, delaying or defeating his existing creditors, or in anticipation of incurring indebtedness. He appears to have carried on his business until he was incapacitated from doing so by the loss of his sight, in the fall of 1873. When he sold the property to the railroad company his business debts amounted to about $1,500, and there were then due to him, from credits in his business, from $5,000 to $6,000, of which he considered from one-half to two-thirds good and collectible, and there is no evidence that he was not warranted in his estimate, although those credits subsequently, by reason of the financial panic, became worthless. Out of the money received from the railroad company he paid nearly all his debts. He owed Phelps, Dodge & Co. about $600 on the 1st of May, 1873, and he appears to have paid them at least $300 on account, previously to the 1st of July in that year, and the amount of his indebtedness to that firm on the last-mentioned day was, he says, about $600. He swears that he was entirely solvent then. It does not appear that the gift to his wife was, at the time, prejudicial to the rights of any other persons, nor in meditation of any fraud or injury to any one. The evidence does not lead to the conviction that there was a present purpose to contract future indebtedness, the payment of which was to be evaded or hindered, or that there was any other fraudulent design to the injury of creditors. *Carpenter* v. *Carpenter's ex'rs*, 12 *C. E. Gr.* 502. There is no direct evidence that Mrs. Skillin held the property in trust for her husband. The complainant's rely for proof of a trust on what they insist is evidence of fraud. But there is no proof of *mala fides* in the transaction. There is, therefore, no proof of trust. The bill will be dismissed, with costs.